**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MICHAEL KIEPERT,**

    **Plaintiff,**

**v.**                                                             **Case No: 6:17-cv-1632-Orl-41GJK**

**THE COUNTY OF VOLUSIA;
JONATHAN D. KANEY, JR.; DOUG
DANIELS; PAT PATTERSON;
DEBORAH DENYS,**

    **Defendants.**

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH NON-PARTY DEPOSITION SUBPOENA SERVED ON HYATT BROWN AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 41)** |
| **FILED:** | **July 25, 2018** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

**I.**    **BACKGROUND**.

On October 20, 2017, Plaintiff Michael Keipert filed an Amended Complaint against Defendants Volusia County, Jonathan D. Kaney, Jr., Doug Daniels, Pat Patterson, and Deborah Denys. Doc. No. 20. Also on October 20, 2017, in Case No. 6:17-cv-1634-41GJK, Theodore Doran filed an Amended Complaint against Kaney, Daniels, Patterson, and Denys. Case No. 6:17-

cv-1634-41GJK, Doc. No. 24. On June 27, 2018, the cases were consolidated, and this case was made the lead case in which all documents shall be filed. Doc. No. 40.

Keipert and Doran allege that Daniels, Patterson, Denys, and Northey, were Volusia County Councilmembers. Doc. No. 20 at ¶ 15; Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at ¶¶ 13. On October 10, 2013, the Volusia County Council voted for Volusia County to invoke its investigative powers under its Home-Rule Charter to investigate political advertising and campaign contributions. Doc. No. 20 at ¶ 19; Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at ¶ 17. Kaney was hired to do the investigation, and he investigated allegedly improper campaign contributions during the 2012 election for county councilmembers in the form of bus bench advertisements. Doc. No. 20 at ¶¶ 38; Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at ¶¶ 22, 37. Keipert and Doran imply that the investigation was commenced in 2013 to affect the 2014 county council elections. Doc. No. 20 at ¶ 18; Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at ¶ 16. Pursuant to the investigation, in February 2014, Kaney subpoenaed Keipert and Doran to appear to answer questions. Doc. No. 20 at ¶ 37; Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at ¶ 36. On March 10, 2014, Kaney sued Doran, among others, in the Seventh Circuit Court in and for Volusia County to enforce the subpoena. Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at ¶ 42. On December 8, 2014, the Seventh Circuit Court granted Doran's motion for judgment on the pleadings and held that Volusia County did not have the power to subpoena Doran in this situation. *Id.* at 135-42. Keipert's and Doran's causes of action arise from those subpoenas.

Specifically, Keipert alleges claims against Volusia County under 42 U.S.C. § 1983 for violating his rights under the Fourth Amendment (Count I), the First Amendment (Count II), and the Fourteenth Amendment (Count III). Doc. No. 20 at 9-17. Keipert also alleges that Volusia County violated his right to privacy under Florida tort law (Count IV). *Id.* at 17-18. Regarding

Kaney, Daniels, Patterson, Northey, and Denys, Keipert alleges another claim under 42 U.S.C. § 1983, that they conspired to violate his constitutional rights (Count V). *Id.* at 18-19. Keipert also alleges that they conspired to violate his right to privacy under Florida tort law (Count VI). *Id.* at 20.

Doran brings claims under 42 U.S.C. § 1983, alleging that Kaney, Daniels, Patterson, Northey, and Denys conspired to violate his Fourteenth Amendment substantive due process rights (Count I) and equal protection rights (Count II). Case No. 6:17-cv-1634-41GJK, Doc. No. 24 at 11-19. Doran also alleges a claim for malicious prosecution against Kaney based on Kaney suing Doran in state court to enforce the subpoena (Count III). *Id.* at 19-22. Doran asserts a claim for conspiracy to maliciously prosecute against Daniels, Patterson, Northey, and Denys (Count IV). *Id.* at 22-24. Doran's final claim is one for abuse of process against Kaney (Count V). *Id.* at 24.

On July 13, 2018, Keipert served Hyatt Brown with a subpoena to appear for a deposition on August 6, 2018.[1] Doc. No. 41 at 11; Doc. No. 42 at ¶ 3. On July 25, 2018, Brown filed a "Motion for Protective Order and/or to Quash Non-Party Deposition Subpoena Served on Hyatt Brown and Incorporated Memorandum of Law" (the "Motion"). Doc. No. 41. On August 3, 2018, Keipert filed a response to the Motion. Doc. No. 46.

## II. ANALYSIS.

Federal Rule of Civil Procedure 26(b)(1) provides the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[1] The discovery deadline was July 30, 2018. Doc. No. 27 at 1.

Under Rule 26(c)(1), a party moving for a protective order must show that good cause exists for the court to issue such an order "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[2] In addition to finding good cause, the court must also be satisfied that, on balance, the interests of the party seeking the protective order outweigh the interests of the opposing party. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989). The moving party bears the burden of establishing entitlement to a protective order. *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011).[3] Although the bases for granting a protective order are narrow, the Court may limit the extent of discovery "if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Brown argues the following in support of the Motion: (1) he has no information relevant to the claims; (2) Keipert did not issue a Rule 30(b)(6) subpoena and is prohibited from conducting an "apex" deposition regarding Brown & Brown, of which Brown is Chairman of the Board of Directors; and (3) Keipert can obtain the information he seeks from other sources or through written deposition questions. Doc. No. 41. The second and third arguments are rejected.

Keipert states that he is "not seeking Mr. Brown's deposition because he is the chairman of Brown & Brown, nor are [Keipert and Doran] seeking information from Brown & Brown." Doc. No. 46 at 6. Regarding obtaining the information through less intrusive means, Keipert is

---

[2] Under Rule 45(d)(3), the bases for quashing or modifying a subpoena that are applicable here are more limited than those for granting a protective order under Rule 26(c)(1), specifying that the court must grant the motion to quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Brown requests that the Court "enter a [p]rotective [o]rder prohibiting the plaintiff from taking his deposition and/or quashing Plaintiff's subpoena . . . ." Doc. No. 41 at 9. Brown does not argue that the subpoena requires disclosure of privileged or protected matter or subjects him to an undue burden. Accordingly, the Court reviews the Motion as one for a protective order under Rule 26(c)(1).

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

seeking Brown's personal knowledge. *Id.* at 5. Thus, seeking Brown's personal knowledge through another source does not qualify as an equivalent less obtrusive method of obtaining the information. Additionally, Brown does not explain how written deposition questions would be less intrusive than an oral deposition.

But Brown's argument that he has no relevant information is well-taken. Brown submitted an affidavit stating that he has "no personal knowledge of any facts or other information as to the allegations in the First Amended Complaint pertaining to the County Council's decision to appoint special counsel to investigate the Waverly Matter or the County Council and the special counsel's actions related to that investigation."[4] Doc. No. 42 at 4. More persuasive than this is Keipert's explanation of how Brown allegedly has relevant information, however.

Keipert argues that Charles Lydecker was an executive at Brown & Brown during the 2012 elections and is Brown's close friend. Doc. No. 46 at 3. Lydecker allegedly opposed Doran's campaign for county chair, was in contact with a "mole" in Doran's office, provided false information to the County Council, and participated in its "illegal investigation." *Id.* at 3-4. Keipert states that Lydecker and "Brown were well-known in Volusia County and for their involvement in local politics." *Id.* at 3. He alleges that "Brown purposefully orchestrated a movement to oppose DORAN in the 2012 election." *Id.* Keipert states that on January 17, 2015, "Brown accosted DORAN at an annual dinner of the Civil League that lead to a heated exchange about the issues raised in DORAN's Complaint." *Id.* at 5. Keipert states that Brown "does not deny that he may have relevant information or knowledge surrounding the forged and fabricated Waverly Memo or

---

[4] The "Waverly Matter" appears to be a reference to an allegedly "falsified and forged Waverly Media invoice, which inferred that DORAN's campaign received bus bench advertisements that were kept 'off books' in violation of campaign law." Doc. No. 46 at 4.

- 5 -

relating to the actions of Mr. Lydecker to furnish false information to [Kaney] and assist [Kaney] in his investigation through a mole in DORAN's office . . . ." *Id.*

Keipert thus argues that Brown has relevant information because he is close friends with a person allegedly assisting Volusia County's investigation and because of Brown's activities in the 2012 election. *Id.* at 3-5. Although the person assisting Volusia County's investigation may have personal knowledge of the facts regarding the claims in this litigation, Keipert alleges nothing indicating that Brown has such knowledge. The 2012 election may have been the impetus for the investigation conducted by Volusia County, but Keipert and Doran do not provide the Court with any facts demonstrating that Brown has information from the 2012 election that is relevant to allegedly illegal subpoenas issued in 2014 by Volusia County. The Court finds that the proposed discovery is not relevant or proportional to the needs of the case and thus is outside the scope permitted by Rule 26(b)(1).

### III. **CONCLUSION.**

Accordingly, it is **ORDERED** as follows:

1. The Motion, Doc. No. 41, is **GRANTED**.

2. The subpoena dated July 11, 2018, directed to Hyatt Brown is hereby quashed.

**DONE** and **ORDERED** in Orlando, Florida, on September 21, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties